Filed 5/22/26  P. v. Johnson CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br>FELIX MARTINEZ JOHNSON,<br>        Defendant and Appellant. | A172133<br><br>(Contra Costa County<br> Super. Ct. No. 042200737) |

### MEMORANDUM OPINION[1]

After a contested hearing, the trial court found Felix Johnson in violation of his probation and sentenced him to the four-year state prison commitment that had been previously imposed but for which the execution had been suspended as part of a negotiated plea agreement.  Johnson now contends that in committing him to prison, "the court mistakenly believed it was bound by a stipulation in the plea agreement . . . ."  Therefore, in "automatically terminating probation and executing sentence," Johnson asserts that the trial court failed to exercise its discretion, requiring remand. We see no mistaken understanding and affirm.

---

[1] Because this appeal "raise[s] no substantial issue of law or fact," we resolve this case by memorandum opinion in accordance with California Standards of Judicial Administration, section 8.1 and *People v. Garcia* (2022) 97 Cal.App.4th 847, 851.

1

# BACKGROUND

In 2022, the Contra Costa County District Attorney filed a felony complaint charging Johnson with six counts including the malicious discharge of a firearm at an occupied motor vehicle, assault with a semiautomatic firearm, and related offenses. It was also alleged that Johnson had suffered two strike prior convictions.[2]

On February 16, 2023, after being held to answer at a preliminary hearing and the filing of an information,[3] Johnson entered into a negotiated agreement in which he pled no contest to a felony charge of assault by means of force likely to produce great bodily injury (Pen. Code,[4] § 245, subd. (a)(4)) and admitted aggravating circumstances of great violence or bodily harm and violent conduct indicating a serious danger to society (Cal. Rules of Court, rule 4.421(a) & (b)(1)).[5] The court (Hon. D. Goldstein) sentenced Johnson to the "upper term" of four years in state prison, the execution of which was suspended for a period of two years while Johnson was placed on a grant of "formal felony probation," including varied terms and conditions.

---

[2] We "will not recount the underlying facts of the case that put Mr. Johnson on probation" because, as articulated in Johnson's letter in mitigation submitted before sentencing, Johnson did "not argue for the imposition of either the mitigated or mid-term sentencing options."

[3] Johnson had previously entered into a plea agreement in which he agreed to a sentence of six years in state prison that would be suspended while he participated in a residential drug treatment program. After Johnson was unable to secure placement in the treatment program, he was permitted to withdraw his plea, charges were reinstated, and the case proceeded to preliminary hearing.

[4] Further undesignated statutory references are to the Penal Code.

[5] The information was amended to enable Johnson to enter into this plea agreement. The remaining counts were dismissed and the enhancements stricken.

In accepting the plea agreement, the trial court expressed "great reluctance" and "extreme concern for public safety." It declined to sign "the [stipulated plea agreement] submitted by the People," which stated the suspended sentence would be "automatically" imposed, because "[t]he court, technically, is not bound or required to impose the [four-year state prison sentence] for any probation violation." But the court made "clear to Mr. Johnson today that it's highly likely to be imposed." The court emphasized, "this offer is something of a gift in my mind, and that I will take any probation violation quite seriously, even if it doesn't rise to the level of the violent nature of this case . . . ." This case is "not a typical grant of probation, where a failure to report to Probation is gonna result in time served, a slap on the wrist and release from custody. [¶] This is a case where the four-year suspended execution sentence will be taken extremely seriously by the court." Speaking directly to Johnson, the court cautioned, "there are rules that you're gonna have to follow, and even if you break certain rules without resorting to violence towards anyone, you're at extreme risk of having the suspended prison sentence imposed."

On August 12, 2024, the probation department filed a "Supplemental Petition to Continue Probation in Revoked Status"[6] alleging that Johnson had "failed to obey the law by shoplifting, using force against an officer,

---

[6] The probation department had filed an initial "Petition to Revoke Probation" on May 9, 2024, alleging Johnson "disobeyed the law" on April 17, 2024, "by violating" sections 211, 368, subdivision (b)(1), 69, subdivision (a), and 594, subdivision (a)(1), "all felonies." As the offenses were alleged to have been committed in Berkeley, California, a separate complaint was filed in Alameda County Superior Court, the outcome of which is not included in this record. The Contra Costa County District Attorney's Office did not proceed to hearing on this May 2024 revocation petition, so we do not discuss it further.

battering police officer, disturbing the peace, and resisting arrest." At the ensuing contested hearing, officers testified that when responding to a call of an *Estes*[7] robbery, they observed Johnson running down Powell Street in San Francisco while being pursued by an individual wearing a security uniform. One uniformed officer chased Johnson onto a trolley, at which time Johnson threw a 15- to 20-pound duffle bag at the officer's chest, pushing the officer back one to two feet. Johnson jumped off the trolley and continued to flee through traffic, disobeying the officers' commands to stop. Officers were able to detain Johnson after he "hopped on one of the moving vehicles and then rolled off the back trunk."

As the officers attempted to place Johnson in a patrol vehicle, Johnson "was stiffening his body, [and] straightening his feet making it difficult to place him inside of the vehicle." Once in the patrol car, Johnson lay down on the backseat, so officers could not put a seatbelt on him; concerned for Johnson's safety, officers called an ambulance to transport him. After the ambulance arrived, officers removed the handcuffs from Johnson to place him on a gurney, but Johnson continued to pull his hands away and tried to sit up. Johnson swung his knee towards an officer in "an attempt to knee [him]" and kept "thrashing the legs around." When Johnson was restrained on the gurney, he continued to try to unbuckle himself from the restraints and sit up such that he had to be handcuffed.

---

[7] *People v Estes* (1983) 147 Cal.App.3d 23. "What sets an *Estes* robbery apart from a standard robbery is that force or fear is used not in the acquisition of the property, but in the escape." (*People v. Robins* (2020) 44 Cal.App.5th 413, 419, citing *Estes*, at p. 28.) Though not admitted for its truth, the *Estes* robbery reference was permitted to explain the officers' conduct and to show "the lawfulness of the detention."

Throughout the officers' detention efforts, which took about an hour, "there was a lot of struggle over securing [Johnson's] person" and threats by Johnson such as, "Unlock the camera and get your ass beat"; "When the cuffs come off, you all are going to get some"; "When the cuffs come off, you are going to sleep"; "I am going to make sure I hunt you down"; "Remember this face"; "When the wrists come off, someone is going to get K'd or caked"; "I am going to fuck you up"; and "If you are working or not working, one of your coworkers was going to feel that."

At the conclusion of the probation violation hearing, the hearing court (Hon. P. Scanlon) found that "the People have met their burden by a preponderance of the evidence to show that Mr. Johnson did indeed violate his probation terms." Prior to the separately held sentencing hearing, Johnson filed a letter in mitigation requesting the court "exercise its discretion to reinstate [Johnson] on probation with whatever sanction the court sees fit considering its finding . . . ." The letter represented, "Mr. Johnson understands and agrees that should the court permanently revoke probation that it will impose a 4-year state prison sentence" but claimed Johnson "is capable of change" and requested the court "reinstate his grant of probation with whatever custodial sanction the court deems necessary to ensure public safety."

At the subsequent sentencing hearing, Johnson expounded upon his argument "that the court does have the legal authority to reinstate Mr. Johnson's probation if it chose to," after which, the district attorney recited the last sentence of the stipulated plea agreement that the court had not signed in 2023: " 'Defendant stipulates, as an essential and binding condition of this plea agreement, that if he were to be found in violation of his

5

probation for any reason, the full suspended prison term of four years --'
[n]ow this is underlined '-- shall mandatorily be imposed.' "

After reciting its review of the record—including the preliminary hearing testimony for "the original case" upon which Johnson "is being sentenced" and the transcript of the change of plea hearing—the court imposed "the previously suspended execution of the upper term on . . . the [section] 245, [subdivision] (a)(4), of four years State Prison."

Johnson filed a timely notice of appeal.

## DISCUSSION

In arguing for remand, Johnson focuses on two of the hearing court's comments to suggest the court "was not exercising its discretion but was automatically terminating probation and executing sentence based on any violation . . . ." First, after defense counsel characterized Johnson's conduct as "simply a violation, which was . . . a somewhat de minimis resisting," the court "explained," "It doesn't matter if he spit on the sidewalk or committed a new murder as far as a probation violation is concerned. He is supposed to follow all of the terms and conditions." Second, after the district attorney recited the language from the stipulated plea agreement that the prison sentence "shall be mandatorily imposed," the court said, "That is what Mr. Johnson agreed to." Johnson asserts these statements mean the court did not consider if reinstatement on probation was an appropriate sanction before sentencing him to state prison. We disagree with this narrow reading of the record and affirm.

Section 1203.2, subdivision (c) provides that upon the revocation and termination of probation, "if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect." Even so, "the

6

sentencing court retains discretion to reinstate probation." (*People v. Medina* (2001) 89 Cal.App.4th 318, 323; *People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421 ["The decision whether to reinstate probation or terminate probation (and thus send the defendant to prison) rests within the broad discretion of the trial court"].) Because of this "very broad" discretion, " 'only in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .' " (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.) However, " 'a court that is unaware of its discretionary authority cannot exercise its informed discretion.' " (*Bolian*, at p. 1421.) Thus, if the record indicates the court "misunderstood or was unaware of the scope of its discretionary powers," we should remand for the proper exercise of discretion, but if "the record indicates the court was aware of its discretion or the record is merely silent," then no remand is necessary. (*Ibid.*)

The record here demonstrates that the trial court was well aware of its sentencing authority to reinstate probation. At the conclusion of the probation revocation hearing, Johnson waived time for sentencing in order "to get together" some out-of-county documents. Then, prior to the sentencing hearing, Johnson's attorney submitted a letter in mitigation, which the court on the record acknowledged receiving, that repeatedly requested the court "exercise its discretion to reinstate [Johnson] on probation." Last, at the sentencing hearing, because of this "extensive" briefing, Johnson's defense attorney stated, "I am happy to submit."

However, counsel then characterized the basis of Johnson's probation violation as "de minimis resisting." In response, the court clarified its understanding of the law and the scope of the violation it had found: "The fact that the only thing presented and found was resisting arrest is what will

7

trigger the previously imposed sentence. Again, he's already been sentenced; it just hasn't been executed pending his violation of probation. [¶] Please, do not tell me that only a minor probation violation was shown. It's debatable whether the resisting that went on with the police officers was minor or not."

Defense counsel returned to his request for the reinstatement of probation, explaining, "I was describing the facts surrounding the nature of the violation just to put forth my argument that the court does have the legal authority to reinstate Mr. Johnson's probation if it chose to. I was urging it to choose that." After brief additional comments from both counsel, including the district attorney's previously referenced recitation of the language of the plea agreement, the trial court demonstrated its expansive review and consideration of the record by reciting the charges originally filed against Johnson; his prior strike convictions that were also serious and violent felonies; the terms of the original plea agreement that had been withdrawn; the preliminary hearing and resulting information with statements in aggravation; the ultimate resolution of the case by which "Mr. Johnson pled to a non-strike" but admitted the aggravating circumstances and waived prior in-custody credits; and the letter in mitigation, which reiterated "all of [the] factors [that] were known at the time of the sentence, which is why [Johnson] got the sentence that he did." The court then clearly stated the basis for the sentence was the finding on the probation violation, not the language of the plea agreement: "I am prepared to sentence him at this time, *based on* the finding of his probation violation . . . . [¶] . . . [¶] Wherein, Mr. Johnson was accused of using force against the officer, battering a police officer, disturbing the peace, and resisting arrest was found true after the court heard from those officers." (Italics added.)

Only then did the court "impose the previously suspended execution of the upper term on Count 7, the [section] 245[, subdivision] (a)(4), of four years State Prison." Where the entire focus of Johnson's argument was his request for the reinstatement of probation, this record is not silent, nor does it suggest the court was " 'unaware of its discretionary authority.' " (*People v. Bolian, supra*, 231 Cal.App.4th at p. 1421.) Instead, it is a record replete with details of Johnson's criminal history demonstrating why the court did not think the requested reinstatement of probation was appropriate. Disagreement with a court's ruling is not a basis for reversal. (See, e.g., *People v. Torres* (2020) 47 Cal.App.5th 984, 988–989 [an appeal that " 'merely affords an opportunity for a difference of opinion' " does not mean an appellant has shown an abuse of discretion]; *People v. Carmony* (2004) 33 Cal.4th 367, 378 ["a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge' " ' "].) On this record, we see no abuse of discretion.[8]

In any event, remand is unnecessary where "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Here, even assuming arguendo the sentencing court misapprehended the scope of its discretion, the

---

[8] For the first time on reply, Johnson argues the court failed to consider "the nature of the violation and the defendant's past performance on supervision" in deciding whether to revoke probation and impose the suspended sentence. (Cal. Rules of Court, rule 4.435(a).) We do not consider arguments raised for the first time on reply. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [issues "omitted from the opening brief" are deemed "waived"].) Regardless, Johnson had the opportunity to provide the court with any relevant information in his letter in mitigation, which, as the court noted, merely presented the same facts that "were known at the time of the sentence, which is why [Johnson] got the sentence that he did."

court's discussion of its review of the case files and Johnson's criminal history make us "virtually certain" that the court would impose the same four-year prison sentence if we remanded the matter. (*People v. Coelho* (2001) 89 Cal.App.4th 861, 890.)

## DISPOSITION

The revocation of probation and imposition of sentence is affirmed.

DESAUTELS, J.

We concur:


RICHMAN, ACTING P.J.


MILLER, J.


*People v. Johnson* (A172133)